# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SCOTT M. DAWLING,               )
                                )
            Plaintiff,          )
                                )
    v.                          )    1:19CV171
                                )
ANDREW M. SAUL,                 )
Commissioner of Social          )
Security,[1]                    )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Scott M. Dawling, brought this action pro se pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 14 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 16, 17; see also Docket Entry 18 (Defendant's Memorandum), Docket Entry 20 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of July 20, 2011.  (Tr. 273-84.)  Upon denial of those applications initially (Tr. 81-104, 156-60) and on reconsideration (Tr. 105-32, 161-70, 174-82), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 183-84). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 55-80), at which Plaintiff amended his disability onset date to July 21, 2015, the day after an ALJ's decision denying Plaintiff's prior claims for DIB and SSI (see Tr. 41, 62). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 38-50).  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 272), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since July 21, 2015[,] the amended alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: history of ankle fractures and inflammatory arthritis.
>
> . . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . . He can frequently perform crouching[.]

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from July 21, 2015, through the date of this decision.

(Tr. 43-49 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

4

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

### B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "all the pages of medical records show how long [Plaintiff has] been out of work [and] show[] how long [Plaintiff has] been under [a] doctor['s] care," Plaintiff "can't make a living in and out of the doctor['s] office," and "[Plaintiff is] on Humira that sta[r]ted at one shot every two week[s] [and] now [takes] one shot a week showing [his] problem has increase[d]" (Docket Entry 16 at 1; see also Docket Entry 20 at 1); and

2) in defending the ALJ's denial of benefits, "[Defendant] only discuss[ed] doctors that had no re[a]l deal of [Plaintiff's] medical condition . . . and did not mention the doctor that found the problem that [Plaintiff] was dealing with" or other doctors such as "[Dr. Robb A.] Mothershed," "Dr. [Angel A.] Brown," "Dr. [Aldona] Ziolkowska," "Dr. [Rebecca B.] Everly," or "Dr. [Julio] Reyes" (Docket Entry 20 at 1).

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 18 at 7-13.)

### 1. Medical Evidence

Plaintiff first contends that "all the pages of medical records show how long [Plaintiff has] been out of work [and] show[] how long [Plaintiff has] been under [a] doctor['s] care," that Plaintiff "can't make a living in and out of the doctor['s] office," and that "[Plaintiff is] on Humira that sta[r]ted at one shot every two week[s] [and] now [takes] one shot a week showing [his] problem has increase[d]."  (Docket Entry 16 at 1; see also Docket Entry 20 at 1.)  That argument does not entitle Plaintiff to relief.

As an initial matter, Plaintiff neither specifically identified any of the "medical records" which he believes "show how long [he has] been out of work [and] . . . under [a] doctor['s] care," nor assigned any particular error to the ALJ's decision. (Docket Entry 16 at 1.)  Under such circumstances, the Court can undertake only a generalized determination of whether the ALJ applied the correct legal standards and supported his findings with substantial evidence. See Fitton v. U.S. Comm'r Soc. Sec. Admin., No. CV 6:15-02894, 2017 WL 129925, at *5 (W.D. La. Jan. 12, 2017) (unpublished) (finding that pro se plaintiff's argument "that the ALJ erred in reaching the ultimate conclusion that the [plaintiff] [wa]s not disabled and erred in not ordering a period of

9

disability[ wa]s too general to be considered by the [c]ourt" and proceeding to analyze whether "substantial evidence support[ed] the ALJ's disability determination" (bold font omitted and standard capitalization applied)).

More significantly, however, Plaintiff's argument misunderstands the SSA's definition of disability. Plaintiff cannot establish "disability" under the Act merely by establishing that he has not held a job or has remained under a doctor's care for a length of time. See 42 U.S.C. § 1382c(a)(3)(B) ("[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."); see also 20 C.F.R. §§ 404.1566, 416.966. Rather, Plaintiff must show the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).

Here, a review of the ALJ's decision shows that he applied the correct legal standards and supported his factual findings with substantial evidence.

At step two of the SEP, the ALJ found, in accordance with the regulations, see 20 C.F.R. §§ 404.1522, 416.922, that Plaintiff's history of ankle fractures and inflammatory arthritis qualified as severe impairments because they significantly limited Plaintiff's ability to perform basic work activities. (See Tr. 43.) In contrast, the ALJ concluded that Plaintiff's hidradenitis suppurtiva, left knee osteoarthritis, left wrist osteoarthritis, low back pain, cervical radiculopathy, hyperlipidemia, tinnitus, headaches, anxiety disorder, affective disorder, chronic pain syndrome, reflex sympathetic dystrophy of the right lower extremity, neuritis, neuropathy, lumbar degenerative disc disease, and status post right foot surgery constituted non-severe impairments, because they either "show[ed] . . . nothing more than mild degenerative changes," "prove[d] stable with medications," "were [] acute and successfully treated in the short term, or else have not been particularly symptomatic during the relevant period, requiring little more than routine and/or conservative management." (Tr. 44 (citing Tr. 363, 366, 415, 479-81, 494, 502, 541, 596, 654, 670-87).) With regard to Plaintiff's mental impairments in particular, the ALJ noted that he "assigned great weight to the opinions of [the state agency psychological consultants] who opined

11

that [Plaintiff's] treatment records have failed to support he presence of any limitations resulting from mental impairment." (Tr. 45 (citing Tr. 85, 97, 110-11, 124-25).)  In light of the foregoing, the Court should conclude that the ALJ relied upon the proper legal standards and provided substantial evidence to support his step two findings.

Proceeding on to step three, the ALJ specifically considered Listings 1.02 ("Major dysfunction of a joint(s) (due to any cause)"), 1.06 ("Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones"), and 14.09 ("Inflammatory arthritis"), see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 1.02, 1.06, 14.09. (See Tr. 45.)[6]  The ALJ found that Plaintiff's history of ankle fractures did not meet or equal the criteria of Listings 1.02 and 1.06, because Plaintiff had not shown an inability to ambulate effectively as required by both Listings.  (Id.)[7]  Concerning

---

[6] "The [L]istings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).  "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular [L]isting." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a Listing], no matter how severely, does not qualify.").

[7] "Inability to ambulate effectively means an extreme limitation of the ability to walk . . . [and] is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B.2.b (emphasis added) (internal citation omitted).  Thus, Plaintiff's use of a cane, even assuming its medical necessity, would not demonstrate an "inability to ambulate effectively."

Listing 14.09, the ALJ found that "the evidence fail[ed] to demonstrate the requisite inflammation, deformity, ankylosing spondylitis, spondyloarthropathy, or marked limitations in activities of daily living, social functioning, or ability to complete tasks." (Id.) The ALJ appropriately applied the Listings and substantial evidence of record supports his findings at step three.

Next, the ALJ determined that Plaintiff retained the RFC to perform medium work with frequent crouching. (See id.) In so finding, the ALJ considered Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms," but found such statements "inconsistent" with the evidence of record, "because his treatment records have shown that his symptoms are generally controlled with conservative treatment efforts." (Tr. 46.) As further explicated by the ALJ:

> [W]hile [Plaintiff] report[ed] that he ha[d] experienced disabling pain since July 2015, . . . [in] his treatment records in May 2015, providers found that [Plaintiff] was doing great with medications and noted no difficulty in terms of his strength, joints, or gait [(Tr. 367-68)]. This presentation for [Plaintiff] continued, as his rheumatologist Tauseef Syed, M.D. noted that [Plaintiff] experienced no degree of limitations in terms of his activities of daily living and found that he was capable of returning to work from an arthritis point of view [(Tr. 361-63)]. This view for [Plaintiff] continued well after this, as while providers in 2016 did question the degree of work that [Plaintiff] could perform, based upon his allegations, they all agreed that he remained generally stable from his conditions with medications [(Tr. 542, 554-55, 558)]. In fact, his provider, Aaron Michael Boals, M.D. specifically noted that he found that

13

> [Plaintiff] was less than fully committed to his recovery
> efforts and appeared more committed to his inability to
> perform work [(Tr. 558-59)]. In this, [Dr. Boals] in
> great detail noted how [Plaintiff] had continued to
> cancel appointments with his rheumatologist Dr. Syed and
> remarked that objectively, [Plaintiff] showed no
> significant evidence of degenerative changes to support
> his complaints of pain [(Tr. 541, 559)]. Therefore, due
> to the inconsistency in [Plaintiff's] statements, this
> led [Dr. Boals] to decide not to treat [Plaintiff], as
> his allegations were not substantiated by his objective
> findings. In fact, while [Plaintiff] reported that he
> needed a cane to ambulate and presented to providers with
> one, by July 2016, his rheumatologist found [Plaintiff]
> sustained no evidence of function loss to support his
> need for an assistive device [(Tr. 596)]. Objective
> findings supported this finding, as x-rays of the wrists,
> knees, and ankles all showed nothing more than mild
> degenerative changes with [Plaintiff] [(Tr. 596-97)].
> This continued as throughout his treatment records, his
> providers have continued to find [Plaintiff] with no
> evidence of edema or cyanosis in the extremities to
> support his allegations of sustained pain and his
> provider[s] have found his symptoms well controlled with
> medications [(Tr. 591-92, 682)].
>
> . . .
>
> [T]reatment records have shown that while [Plaintiff] has
> testified that he has experienced disabling difficulty in
> terms of standing or walking, his providers all have
> noted no significant evidence of joint instability,
> swelling, or severe degenerative changes to support his
> sweeping complaints of pain. Further limiting his
> allegations is the fact that despite his allegations of
> disabling pain, his providers have agreed that his
> symptoms are well controlled with medications and have
> required nothing more than continued medications for his
> pain complaints. In fact, . . . his providers have[] not
> only[] continued to find [Plaintiff] with full range of
> motion in all extremities, five out of five in muscle
> strength, and normal gait, but also, have questioned the
> extent of [Plaintiff's] pain complaints.

(Tr. 46-48.) That analysis comports with the applicable

regulations and SSA policy regarding evaluation of a claimant's

14

subjective symptoms.  See 20 C.F.R. §§ 404.1529, 416.929; see also Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25, 2017).[8]

In short, Plaintiff has not shown that, in finding Plaintiff not disabled, the ALJ misapplied the governing legal standards or failed to support his factual findings with substantial evidence.

## 2. Opinion Evidence

Plaintiff next maintains that, in defending the ALJ's denial of benefits, "[Defendant] only discuss[ed] doctors that had no re[a]l deal of [Plaintiff's] medical condition . . . and did not mention the doctor that found the problem that [Plaintiff] was dealing with" or other doctors such as "[Dr.] Mothershed[,] . . . Dr[.] Brown, Dr[.] Ziolkowska, Dr[.] Everly or Dr[.] Reyes." (Docket Entry 20 at 1 (emphasis added).)  Those contentions fall short.

At the outset, the undersigned acknowledges that Plaintiff's above-quoted argument appears in Plaintiff's Reply in opposition to Defendant's Motion for Judgment on the Pleadings and supporting Memorandum (see id.), rather than in Plaintiff's Complaint or his

---

[8] Plaintiff's argument that an alleged increase in his Humira dose from one shot every two weeks to one shot per week "show[s his] problem has increase[d]" falls short.  (Docket Entry 16 at 1; see also Docket Entry 20 at 1.) Plaintiff does not cite to any record documenting an increase in his Humira dose (see id.), and the most recent records from his rheumatologist reflect continuation of his every-other-week Humira dose (see Tr. 592, 682).

15

motion for judgment (see Docket Entries 2, 20). Moreover, that argument challenges Defendant's evaluation of the opinion evidence rather than specifically assigning error to the findings of fact and/or conclusions of law of the ALJ. Nevertheless, the undersigned must liberally construe Plaintiff's pro se arguments, Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and thus will interpret Plaintiff's argument as a contention that the ALJ did not assign sufficient weight to the opinions and findings of "the doctor that found the problem that Plaintiff was dealing with" or to Drs. Mothershed, Brown, Ziolkowska, Everly, or Reyes.

As an additional threshold matter, Plaintiff has neither identified "the doctor that found the problem that Plaintiff was dealing with" nor the specific opinions and/or findings by Drs. Brown, Ziolkowska, Everly, or Reyes that warranted greater consideration or weight. (See Docket Entry 20 at 1.) In light of this, the Court can only generally assess whether the ALJ sufficiently considered opinions (if any) offered by those doctors.

With respect to Plaintiff's former primary care physician Dr. Brown, the record reflects that she treated Plaintiff on only two occasions during the relevant period in this case and, on neither occasion, offered an opinion regarding the impact of Plaintiff's impairments on his ability to function. (See Tr. 356 (note dated Oct. 2, 2015, referring Plaintiff to a rheumatologist, podiatrist,

16

and orthopedist)), 358-59 (office visit on Aug. 26, 2015, noting that Plaintiff was "[o]verall doing well" and that Humira helped his arthritis and hidradenitis).) Moreover, although the ALJ did not specifically discuss either of Dr. Brown's treatment notes during the relevant period (see Tr. 43-48), the ALJ labored under no obligation to explicitly discuss every finding in each piece of evidence in the record, see Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995), and he noted that he "careful[ly] consider[ed] [] the entire record" (Tr. 45 (bold font omitted)). Thus, Plaintiff has not shown how an express discussion of Dr. Brown's two treatment records would make a material difference in the outcome of his case.

In contrast to Dr. Brown, the ALJ did discuss Plaintiff's treatment by Dr. Ziolkowska in 2016 and 2017 (see Tr. 47), noting that she "found [Plaintiff] sustained no evidence of function loss to support his need for an assistive device" (id. (citing Tr. 596)) and that she "continued to find [Plaintiff] with no evidence of edema or cyanosis in the extremities to support his allegations of sustained pain and . . . found his symptoms well controlled with medications" (id. (citing Tr. 591-92, 682)). Plaintiff does not elucidate how the ALJ's further discussion of Dr. Ziolkowska's treatment records would have changed the outcome of his case. (See Docket Entries 2, 16, 20.) Furthermore, the record does not

reflect <u>any</u> treatment during the relevant period by either Dr. Everly or Dr. Reyes.

With respect to podiatrist Dr. Mothershed, Plaintiff disputes the ALJ's statement that his "ankles showed only mild degenerative changes when [Plaintiff's] right foot has be[en] fused and ha[s] no range of motion as [Dr.] Mothershed explained." (Docket Entry 20 at 1 (referencing Tr. 47).)[9] Although an x-ray of Plaintiff's right ankle reflected "[p]rior right subtalar arthrodesis with a single cannulated lag screw," the arthrodesis remained "<u>without failure or complication</u>." (Tr. 596 (emphasis added).) Moreover, Dr. Mothershed did <u>not</u> find that Plaintiff lacked <u>any</u> range of motion in his right ankle (<u>see</u> Tr. 522-23, 555-56); rather, Dr. Mothershed noted "generalized arthritic changes" of the subtalar joint, but "good fusion," "[n]o appreciable edema," intact sensation and reflexes, "<u>reasonable</u> ankle dorsiflexion with the knee extended and the knee flexed bilaterally" with "[n]o . . . crepitus . . . with range of motion of the subtalar and the ankle joints bilaterally" and "good stability [] of the ankle, subtalar, mid-tarsal, and metatarsophalangeal joints of both lower extremities" (<u>id.</u> (emphasis added)).

---

[9] The record reflects that Dr. Mothershed treated Plaintiff on only one occasion (January 7, 2016) (<u>see</u> Tr. 517-35, 554-57 (duplicate copy of Jan. 7, 2016, visit)) and thus Dr. Mothershed's opinions, as a general proposition, do not warrant controlling weight, <u>Turberville v. Colvin</u>, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.).

Dr. Mothershed also noted "that[,] given the chronicity of [Plaintiff's] symptoms[, ] he will not be able to perform physical work." (Tr. 521, 554.) The ALJ evaluated and weighed that opinion as follows:

> [T]he statement from [Plaintiff's] provider, [Dr. Mothershed], who found that [Plaintiff] would be unable to perform physical work is granted little weight, as [] statements that a claimant is "disabled[,"] "unable to work[,"] [or] can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein [(Tr. 554)]. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability.

(Tr. 47.) The ALJ did not err in characterizing Dr. Mothershed's opinion regarding Plaintiff's inability to perform "physical work" (Tr. 521, 554) as one involving a matter reserved to the Commissioner, and certainly did not err by invoking the Commissioner's long-time rule that such opinions constitute matters dispositive of a case and carry no special significance (see Tr. 47). See generally 20 C.F.R. §§ 404.1527(d), 416.927(d).

In sum, Plaintiff has not demonstrated entitlement to reversal or remand arising out of the ALJ's evaluation of the opinion evidence of record.[10]

---

[10] Plaintiff notes that he "would like to have [his] day in court with a jury of [his] peers." (Docket Entry 20 at 1-2.) However, "the Act does not entitle Plaintiff to a jury trial. See 42 U.S.C. § 405(g) ("*The court* shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with
(continued...)

## III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion for judgment (Docket Entry 16) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that judgment be entered dismissing this action.

                                            /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                          **United States Magistrate Judge**

November 19, 2019

---

[10](...continued)
or without remanding the cause for a rehearing." (emphasis added), § 405(h) ("No findings of fact or decision of the Commissioner . . . shall be reviewed by any person, tribunal, or governmental agency except as herein provided.")." Marshall v. Colvin, No. 1:13CV130, 2015 WL 3649754, at *6 (M.D.N.C. June 10, 2015) (unpublished), recommendation adopted, 2015 WL 4459400 (M.D.N.C. July 20, 2015) (unpublished) (Beaty, Jr., S.J.).